# KEVIN T. KELLY
## PATENT ATTORNEY

2669 HAMILTON AVE • EL CENTRO, CA 92243 • (310) 709-5935 • KTKELLY@ME.COM

Alan Fenstermacher
City Attorney, City of Poway
13325 Civic Center Drive
Poway, California 92064

May 16, 2018

\*\*\*CONFIDENTIAL\*\*\*

> **Re: Violations of § 404 of the Clean Water Act; California Public Contract Code § 20162, 20163; Environmental Species Act, 15 U.S.C.A § 1538(a); 50 C.F.R. Part 17; and 40 C.F.R. Part 230.**

Mr. Fenstermacher:

On January 24, 2017, the Poway City Council adopted Resolution No. 17-004, which declared an emergency within the City of Poway and suspended the notice and contract bidding requirements, as well as California environmental review requirements, in connection with storm-related repairs due to the 2017 storm events occurring on January 20, 2017 and February 27, 2017. Inexplicably, the Poway City Council did not discontinue this resolution until March of 2018 even though "emergency" conditions had ceased to exist a year earlier, in March of 2017 when the rains stopped. The City expended a total of $562,186 on various repair projects including to Rattlesnake Creek and Warren Creek drainage structures. (*See* Exhibit A.) However, most of these "emergency" repairs were accomplished by intentionally evading the provisions of the California Public Contract Code requiring competitive bidding and evading environmental review under state and federal law of its public works projects.

Although California Contract Code § 10101 allows cities to suspend state bidding requirements for "contracts for which emergency work or remedial measures are required," the utilization of emergency resolutions are limited to a "sudden, unexpected occurrence that poses a clear and imminent danger, requiring immediate action to prevent or mitigate the loss or impairment of life, health, property, or essential public services." *Marshall v. Pasadena Unified School District*, 119 Cal.App.4th 1241, 1255 (2004) (arguing that the clear language of Section 1102 shows the

Legislature's sweeping intent to establish a common definition of "emergency" throughout the Public Contract Code.) When the governing body reviews an emergency resolution, it must "terminate the action at the earliest possible date that conditions warrant **so that the remainder of the emergency action may be completed by giving notice for bids to let contracts**." Cal. Pub. Cont. Code § 22050(c)(3)(emphasis added). Under a plain reading of this statute, the City of Poway has violated state bidding requirements for any and all contracts coming under its Resolution No. 17-004 after March of 2017, when the heavy rains of 2017 ceased.

Morevoer, the City of Poway has also intentionally evaded environmental review under the California Environmental Quality Act (CEQA) and, more importantly, under federal law, for its repair projects coming under Resolution No. 17-004. The California Court of Appeal in *Los Osos Valley Association v. City of San Luis Obispo*, 30 Cal.App.4th 1670 (1994), describe the limited type of situations where CEQA review can be waived: "The term 'emergency' . . . has long been accepted in California as an unforseen situation calling for immediate action. . . . Not only must urgency be present, the magnitude of the exigency must factor. . . . Emergency is not synonymous with expediency, convenience, or best interest . . . and it imports more than merely a general public need. . . . Emergency comprehends a situation of 'grave character and serious moment.' It is evidenced by an imminent and substantial threat to public health or safety . . ." *Id.* at 1681. Most of the repair work accomplished under Poway's Resolution 17-004 was not done under a strictly construed definition of emergency that case law and the codified statute demand. Furthermore, under federal and state water law, a city must still procure Department of the Army permits for public works projects occurring in streams even in true emergency situtaions. For example, the Los Angeles District of the U.S. Army Corps of Engineers (Corps) has authorized Regional General Permit (RGP) 63, which provides an expedited response to public agencies conducting work in streams for emergency repair and protection measures due to sudden, unexpected events that could potentially result in an unacceptable hazard to life or significant loss of property. Under RGP 63, any projects authorized "must be initiated within 7 days of receiving authorization to proceed. Projects that cannot be initiated within this immediate timeframe generally would not meet the definition of an "emergency." (RGP 63, at 5, Exhibit B.)

In the Lake Poway area, the City has undertaken two projects in particular that were done under the auspicies of an "emergency" but are nonetheless in violation of state bidding and environmental laws. Without following valid permit requirements imposed on the national level by the Corps or the Regional Conditions imposed by the Corps's Los Angeles District office, the City rebuilt an earthen bridge using a corregated metal pipe (CMP) culvert over Warren Creek, which is within a stone's throw away from Lake Poway. Satellite images over Lake Poway in 2017 show

the sediment of the washed-out bridge silting Lake Poway. (*See* Exhibit C.) Not only would the City's rebuilt earthen bridge likely be destroyed during the next season with high rain totals and further silt Lake Poway, the rebuilt bridge clearly does not follow the Corps's national permit requirements that CMP culverts be buried one-feet deep "to maintain passage during drought or low flow conditions." (Nationalwide Permit 14, at 30; *see* Exhibit D.) The City's culvert is sitting flush on the creekbed and has been bent into an oval shape by the weight of the dirt and rocks. (*See* Exhibit E.) It is clearly not a properly engineered bridge. Moreover, the City violated Cal. Pub. Cont. Code § 20163 in its tabluation of the repair costs for this earthen bridge; the City unlawfully split the $4500 cost for CMP repairs at Lake Poway in its July 18, 2017 updated "Report of Emergency Repair Expenditures" from the other costs of the earthen bridge, including the cost of the newly installed weir used to measure water discharge required by the 1968 Water Rights Agreement between Poway and the City of San Diego, in order to avoid state contract bidding requirements. This evasion can be prosecuted as a misdemeanor by the District Attorney's Office under § 20163. The other major project in the Lake Poway area that the City evaded bidding and environmental requirements is the July 17, 2017 "Trail Slope Repair Project." The City discovered a tension crack in the summer of 2017 on a portion of the Lake Poway trail and had it repaired, including replacing a storm drain pipe and reconstructing the slope by benching the exposed slope face and rebuilding the slope with compacted fill. (*See* Exhibit F.) However, as this area is actually a tributary of Warren Creek, the City needed to obtain a Corps permit and reconstruct the slope following Corps mandated bioengineering standards.(*Cf.* "Ephemeral Tributary to Rattlesnake Creek Streambank Stablization Project," July 19, 2011, Exhibit G.) Not only did the City fail to implement a permanent, natural looking, bioengineered solution to the bank stabilization problem and mitigate its damage to the wetlands surrounding Lake Poway, it also failed to properly bid the $38,976 contract for the slope and drainage repairs.

In sum, the City of Poway has created a huge exposure to costly litigation when it failed to rescind Resolution No. 17-004 in a timely manner. If the City chooses to defend itself in a costly lawsuit, it will face stiff penalties in the seven figures for violating the Clean Water Act. *See Center for Biological Diversity v. Marina Point Development Associates*, 434 F.Supp.2d 789 (C.D. Cal. 2006). The City's contracts that were not properly bidded could also be voided, and the contractors would have to return any payments made back to the City's coffers. *See Miller v. McKinnon*, 20 Cal.2d 83 (1942). And the City Council has exposed itself to the taint of criminal liability for violating California Public Contract Code § 20163.

I will agree to not sue the City and to keep the contents of this letter confidential if the City agrees to the following: 1) Acquire my five parcels in the City of Poway, totaling 43.48 acres, as compensatory mitigation for its unpermitted activities in the wetlands of Warren Canyon. My parcels

contain approximately 1500 feet of streams, 7 acres of wetlands, 2 threatened and endangered species (Del Mar Manzanita and Baccharis Vanessae), and 10 acres of gnatcatcher habitat. (*See* Exhibit H.) The City already has an unauthorized maintained trail on my parcels and has been illegally violating the Endangered Species Act by not obtaining valid taking permits for its trail. The full value of my 43.48-acre mitigation bank is $2,850,000. (*See* Exhibit I for a comparable purchase by SANDAG for its mitigation needs in the City of Oceanside in 2012.) If it so chooses, the City can also purchase the additional 20 acres above APN: 278-210-0400 for an additional $300,000 and, through a lot-line adjustment, annex the additional acreage into the City of Poway. (Although the City may think that these figures are high, the City can recoup its costs of the land bank by selling some of the credits to Caltrans for their mitigation needs when Highway 67 is expanded. Also, two retention basins could be built on the 27.18 acre parcel for MS4 mitigation needs and as a creative way to slow the flow of water downstream into Lake Poway and to increase the City's wetland acreage.) and 2) Enter into a consulting agreement with myself for the next 4 years to ensure that I will keep the contents of this letter confidential and to ensure that I will not sue the City before the expiration of the statute of limitations for bringing a lawsuit as described in this letter.

Time is of the essence in our reaching a settlement deal. I want these matters discussed in this letter dealt with before Councilman Cunningham retires on June 5 and before the upcoming campaign season. I intend to file a federal lawsuit against the City on or before June 28, 2018 if we cannot reach a reasonable agreement.

Sincerely,

Kevin T. Kelly

Cal. Bar No. 244402

| | |
|---|---|
| **From:** | Carol Legg |
| **Sent:** | Thursday, April 12, 2018 11:53 AM |
| **To:** | Jim Cunningham - Home |
| **Cc:** | Tina White |
| **Subject:** | FW: Trails to Mt. Woodson |

**From:** Kevin Kelly [mailto:ktkelly@icloud.com]
**Sent:** Thursday, April 12, 2018 11:36 AM
**To:** Jim Cunningham <JCunningham@poway.org>
**Subject:** Trails to Mt. Woodson

Dear Councilman Cunningham,

I presented to Bob Manis a proposal for additional hiking trails and staging areas for cars and/or bicycles to be used by those hiking Mt. Woodson, and I want to share the proposal with you as one of our Councilmembers. I am a landowner of five parcels in Poway that sit at the base of Mt. Woodson (APN: 278-210-1800, 278-210-0400, 278-210-0300, 278-210-3000, and 278-210-2900). A portion of the land sits adjacent to SR 67, and another parcel is off of Coyote Creek Trail. Both sites are excellent candidates for 100-car parking lots or bicycle lots and for additional trails that would simplify the climb up to Mt. Woodson. The area is also a potential location for an underground pedestrian tunnel under Highway 67.

The City of Poway has proposed expanding the staging area parking lot at Iron Mountain and adding a tunnel under Highway 67 near Poway Road to entice hikers to park at Iron Mountain before hiking to Mt. Woodson. However, there is a problem with having the tunnel by Poway Road: the proposed area for hiking trails on the western side of Caltrans's right of way along Highway 67 that would lead up to Mt. Woodson is dangerous and steep terrain where a series of culverts have been installed that drain millions of gallons of water yearly from a blue-line stream and Rock Haven Spring on the eastern side of Highway 67. It would be a huge liability to have hiking trails leading up to Mt. Woodson at this location.

The City of Poway currently maintains an unofficial trail on two of my parcels because my acreage sits outside of the location of the culverts installed under Highway 67 and above the wetlands. However, the City does not have a proper easement from me for this trail. Between the official trailhead of the Warren Canyon trail and the unofficial one currently going through my property lies a blue-line stream, which must be circumvented for safety reasons. Moreover, on the other side of the official Warren Canyon trailhead lie a series of culverts draining Rock Haven Spring and other parts of the Rock Haven Cornerstone. Both the wetlands resulting from the blue-line stream and Rock Haven Spring would have to be traversed by hikers or bicyclists on their way up to Mt. Woodson, which would require a series of bridges over them for safety and ecological reasons. However, as this terrain is very steep, a series of bridges at this location would not be feasible.

I envision a more practical solution to this problem. I am in the process of expanding the property I own in the City of Poway with additional residential acreage that is in the County of San Diego, APN: 278-211-0200, through a lot line adjustment with APN: 278-210-0400. Once the parcels are joined, I will own a total of 63 acres, and I will be willing to sell the acreage to the City of Poway and the County of San Diego as a way to simplify the hike up to Mt. Woodson. The proposed trails on my parcels could easily connect existing trails on land owned by the City of San Diego (Mt. Woodson Road) to the existing Warren Canyon trail. Also, my parcels, including the 60-foot easements I own connecting Coyote Creek Trail to Highway 67 to the east and to High Valley Road to the west, would allow the City of Poway to install hiking and biking trails over gentle rolling hills rather than the steep terrain adjacent to Highway 67. Also my land contains two potential level sites for parking lots at the base of Mt. Woodson, either for bicycles or for cars, and would potentially be a better location for an underground tunnel under Highway 67 to circumvent the wetlands. Furthermore, even if the City of Poway should decide that the current Iron Mountain

parking lot is still a better location for an expanded parking lot and an underground tunnel, my parcels would provide a feasible and cost-effective way to cross the wetlands resulting from the water coming off the Rock Haven Cornerstone and would provide hikers and bicyclists a more pleasurable experience going up or around Mt. Woodson and into the Lake Poway recreation area.

Originally, I bought these five parcels to create a private mitigation bank. The land sits on "headwaters" for Lake Poway, and several endangered and threatened species have been documented on the land. The acreage is extremely valuable both for off-site stormwater MS4 mitigation and for ecological mitigation for developers and Caltrans. However, a private mitigation bank would require me to block public access to these lands. I hope that I can find a better solution so that the public could enjoy this amazing acreage.


Sincerely,


Kevin Kelly

Phone: 310-709-5935

# Sharla Conrad

**From:** Bob Manis
**Sent:** Tuesday, April 10, 2018 12:52 PM
**To:** Sharla Conrad
**Subject:** FW: Proposal
**Attachments:** easements.pdf; pdf Mt Woodson-Rock Haven Spring MitigationBank.pdf; poway letter-04092018113426.pdf; mb prospectus-04092018113526.pdf

Please print all of this for me.

Thanks

**From:** Kevin Kelly [mailto:ktkelly@icloud.com]
**Sent:** Monday, April 9, 2018 12:22 PM
**To:** Bob Manis <BManis@poway.org>; Joseph Lim <JLim@poway.org>
**Subject:** Proposal

Dear Bob,

Joseph Lim suggested that I contact you with my proposal for additional hiking trails and staging areas for cars to be used by those hiking Mt. Woodson. I am a landowner of five parcels in the city of Poway that sit at the base of Mt. Woodson (APNs: 278-210-3000, 278-210-2900, 278-210-0400, 278-210-0300, and 278-210-1800). A portion of the land is directly adjacent to Highway 67, and another parcel is off of Coyote Creek Trail. Both sites are excellent candidates for 175-car parking lots and for additional trails that would make the climb up to Mt. Woodson much easier than the current trails in use. I also own 60-foot wide easements appurtenant to APN: 278-210-1800 connecting the base of Mt. Woodson to Highway 67 as well as 60-foot wide easements that connect the base of Mt. Woodson with High Valley Road. Please see the attachments to this email for more details.

Originally, I bought these five parcels to create a private mitigation bank (see attachments). I am in the process of combining 20 acres of APN: 278-211-0200 to 278-210-0400 through a lot line adjustment so that the acreage can be included in the proposed bank. The land is considered "headwaters" for Lake Poway, and several endangered and threatened species have been documented on the land. The acreage is extremely valuable for both off-site stormwater MS4 mitigation and for ecological mitigation that can be used by developers and Caltrans. However, a private mitigation bank would require me to block public access to these lands; I hope that I can find a better solution so that more people could enjoy this amazing acreage.

Sincerely,


Kevin Kelly, Esq.

Phone: 310-709-5935


Attachments

Exhibit M, Page 761