FILED

Jun 07 2022

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY            s/ AKR            DEPUTY

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF _Southern District of California_

### Form 1. Notice of Appeal from a Judgment or Order of a
### United States District Court

U.S. District Court case number: | 18cv2615

Notice is hereby given that the appellant(s) listed below hereby appeal(s) to the United States Court of Appeals for the Ninth Circuit.

Date case was first filed in U.S. District Court: | November 15, 2018

Date of judgment or order you are appealing: | May 13, 2022

Docket entry number of judgment or order you are appealing: | 59

Fee paid for appeal? *(appeal fees are paid at the U.S. District Court)*

⦿ Yes    ○ No    ○ IFP was granted by U.S. District Court

**List all Appellants** *(List **each** party filing the appeal. Do not use "et al." or other abbreviations.)*

Kevin T. Kelly

Is this a cross-appeal? ○ Yes   ⦿ No

If yes, what is the first appeal case number? |

Was there a previous appeal in this case? ○ Yes   ⦿ No

RECEIVED

JUN 07 2022

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY            DEPUTY

If yes, what is the prior appeal case number? |

Your mailing address (if pro se):

2669 Hamilton Avenue

City: | El Centro       State: | CA       Zip Code: | 92243

Prisoner Inmate or A Number (if applicable): |

**Signature** | _[signature]_        **Date** | 06/7/2022

*Complete and file with the attached representation statement in the U.S. District Court*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

Form 1                                                                 *Rev. 12/01/2021*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT
## Form 6. Representation Statement

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form06instructions.pdf*

**Appellant(s)** *(List **each** party filing the appeal, do not use "et al." or other abbreviations.)*
Name(s) of party/parties:

Kevin T. Kelly

Name(s) of counsel (if any):

Address:

Telephone number(s):

Email(s):

Is counsel registered for Electronic Filing in the 9th Circuit?    ○ Yes    ○ No

---

**Appellee(s)** *(List only the names of parties and counsel who will oppose you on appeal. List separately represented parties separately.)*
Name(s) of party/parties:

City of Poway, a municipal corporation

Name(s) of counsel (if any):

Alan Brian Fenstermacher, Rutan & Tucker, LLP

Address:  18575 Jamboree Road, 9th Floor, Irvine, CA 92612

Telephone number(s):  714-641-3452

Email(s):  afenstermacher@rutan.com

*To list additional parties and/or counsel, use next page.*

Feedback or questions about this form? Email us at *forms@ca9.uscourts.gov*

Continued list of parties and counsel: *(attach additional pages as necessary)*

**<u>Appellants</u>**

Name(s) of party/parties:

Name(s) of counsel (if any):

Address:

Telephone number(s):

Email(s):

Is counsel registered for Electronic Filing in the 9th Circuit?   ○ Yes   ○ No

**<u>Appellees</u>**

Name(s) of party/parties:

City of Poway, a municipal corporation

Name(s) of counsel (if any):

Joshua Nicholas Levine, Booth LLP

Address: 1849 Sawtelle Blvd. Suite 500, Los Angeles, CA 90025

Telephone number(s): 310-641-1800

Email(s): jlevine@boothllp.com

Name(s) of party/parties:

Name(s) of counsel (if any):

Address:

Telephone number(s):

Email(s):

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 6**                                    2                        *New 12/01/2018*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

KEVIN T. KELLY,

                  Plaintiff,

v.

CITY OF POWAY, a municipal corporation,

                  Defendant.

Case No.: 18cv2615-JO-DEB

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS**

      Defendant City of Poway filed a motion to dismiss Plaintiff Kevin T. Kelly's third amended complaint on various grounds, including failure to provide statutory notice, failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), and failure to provide a short and plain statement under Federal Rule of Civil Procedure 8(a)(2). Dkt. 45. For the reasons stated below, City of Poway's motion is GRANTED IN PART and DENIED IN PART.

///

///

18cv2615-JO-DEB

# I. BACKGROUND

Plaintiff, a self-described patent attorney, is a citizen of the city of Poway where he owns 43 acres of land. Dkt. 44 (the "TAC") ¶ 133; Dkt. 44-5. Plaintiff's land allegedly includes streams and springs in Warren Canyon that ultimately feed into Lake Poway. *Id.* Poway is the owner and operator of Lake Poway and portions of the surrounding hillside. Plaintiff alleges that Poway's activities in and around Warren Canyon and Lake Poway violate the Clean Water Act (the "CWA"), the Endangered Species Act (the "ESA"), and Plaintiff's constitutional rights under 42 U.S.C. § 1983.

## A. Statutory Scheme Under the CWA and the ESA

First, the CWA makes it unlawful to discharge any pollutant into United States waters unless the discharge complies with the CWA. *See* 33 U.S.C. § 1311(a). The CWA empowers states to implement permit programs under which permittees may lawfully discharge pollutants. *See id.* § 1342. In California, state law has designated the State Water Resources Control Board and nine regional boards—including the San Diego County Regional Board (the "Board")—as the principal state agencies authorized to issue and enforce such permits. *Nat. Res. Def. Council, Inc. v. Cty. of Los Angeles*, 725 F.3d 1194, 1198–99 (9th Cir. 2013); Cal. Water Code §§ 13200(f), 13225. Pursuant to the CWA, the Board has issued a permit to Poway and other co-permittees (the "Permit") which specifies how Poway may legally discharge pollutants. Dkt. 10-2.

The CWA also authorizes private citizens to sue an alleged violator of the CWA for "the discharge of any pollutant" unless the alleged violator is in compliance with certain enumerated sections of the CWA, such as compliance with a permit issued under § 1342. Before a private citizen can bring a suit against an alleged violator under the CWA, she must provide 60-days' notice containing "sufficient information to permit the recipient to identify the specific standard, limitation, or order alleged to have been violated, the activity . . . the person or persons responsible . . . the location . . . the date or dates," and the personal information of the person giving notice. 40 C.F.R. § 135.3(a). Notice must

1  be given to the Environmental Protection Agency (the "EPA"), the State of California, and

2  any alleged violator. *Id.* § 135.2.

3       Second, the ESA makes it unlawful, among other things, to "take" endangered

4  species of fish or wildlife and to remove plant species in knowing violation of any state

5  law or regulation. 16 U.S.C. §§ 1533, 1538(a)(1), 1538(a)(2). Like the CWA, the ESA

6  allows private citizens to sue to enjoin alleged violators of the ESA. Before a private

7  citizen can sue an alleged violator under the ESA, she must provide 60-days' notice to the

8  Secretary of the Interior or the Secretary of Commerce (the "Secretary"), as applicable, and

9  the alleged violator regarding the violations and the intent to sue. 16 U.S.C. §§ 1532(15);

10  1540(g)(2)(A)(i).

11  **B. Plaintiff's Notices of Violation and Complaints**

12       Plaintiff sent a total of four notices to Poway alleging CWA and ESA violations and

13  notifying Poway of his intent to sue based on discharges in and around Warren Canyon and

14  Lake Poway (the "NOVs"): (1) the first on July 27, 2018 ("1st NOV"); (2) the second on

15  November 5, 2018 ("2nd NOV"); (3) the third on May 24, 2019 ("3rd NOV"); and (4) the

16  fourth on October 1, 2019 ("4th NOV"). Dkts. 44-2, 44-3, 44-5, 44-6.

17       Plaintiff has filed three separate lawsuits based on the violations alleged in the

18  NOVs. Plaintiff filed his first lawsuit *pro se* on November 15, 2018, and his second lawsuit

19  through counsel on September 18, 2019. *See Kelly v. City of Poway*, 18cv2615-JO-DEB;

20  *Kelly v. City of Poway*, 19cv1803-JO-DEB. Plaintiff's first and second lawsuits were

21  consolidated on January 8, 2020 (the "Consolidated Action"). Dkt. 39.[1] Plaintiff filed his

22  third amended complaint in the Consolidated Action on April 3, 2020 (the "TAC"), which

23  Poway moved to dismiss on May 4, 2020. Dkts. 44–45. Plaintiff then filed his third lawsuit

24  through counsel on April 8, 2021. *See Kelly v. City of Poway*, 21cv611-JO-DEB. The

25  third lawsuit, then pending before Judge Todd W. Robinson, was stayed on October 14,

26  

27  

28      [1] Unless otherwise specified, citations to "Dkt." refer to *Kelly v. City of Poway*, 18cv2615-JO-DEB.

1   2021 pending this Court's ruling on Poway's motion to dismiss in the Consolidated Action.

2   *See Kelly v. City of Poway*, 21cv611-JO-DEB at Dkt. 9.

3   **C. The Third Amended Complaint**

4     Plaintiff's 240-page TAC is neither clear nor concise, but as confirmed in the motion

5   papers and during oral argument, Plaintiff brings the following claims:

6     Claims 1, 9, and 10 allege that culverts were washed out during storms, causing

7   impermissible levels of sediment in Lake Poway in violation of Permit Sections A.1.a,

8   A.1.c, and A.2.a(1) (the "Permit Prohibitions and Limitations"). Dkt. 47-1 at 11–12; TAC

9   ¶¶ 435, 497, 528–35, 646–702, 864–72, 874–91.

10    Claims 2 and 3 allege that Poway violated Permit Sections E.2.a and E.2.d by failing

11  to monitor and prevent pollutants flowing from Kelly Spring and Rock Haven Spring (the

12  "Springs"). *Id.* ¶¶ 358–61, 537, 703–75.

13    Claims 4–7 concern allegedly unlawful repair projects Poway completed at Warren

14  Crossing, a boat dock (the "Boat Dock"), and Pipperin Crossing (collectively, the

15  "Projects"). Plaintiff claims that the Projects violated the Permit and CWA §§ 1341 and

16  1344. *Id.* ¶¶ 776–848.

17    Claim 8 alleges that Poway harmed endangered plant and bird species by building

18  and maintaining hiking trails on Plaintiff's property in violation of ESA § 1538(a)(1)–(2).

19  *Id.* ¶¶ 849–62.

20    Claim 11 arises under § 1983 and alleges an unconstitutional taking under the

21  Fourteenth Amendment based on Poway's creation and maintenance of hiking trails on

22  Plaintiff's property. *Id.* ¶¶ 892–909.

23    Claim 12 arises under § 1983 and alleges an unconstitutional taking under the

24  Fourteenth Amendment based on Poway's wrongful designation of Warren Creek as an

25  "ephemeral stream" instead of waters of the United States ("WOTUS"). *Id.* ¶¶ 910–21.

26         **II. STANDARD OF REVIEW**

27    A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint. *See*

28  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rule 12(b)(6) is read in conjunction with Rule

1   8(a), which requires only "a short and plain statement of the claim showing that the pleader

2   is entitled to relief." Fed. R. Civ. P. 8(a)(2).  While Rule 8 does not require detailed factual

3   allegations, at a minimum, a complaint must allege enough facts to provide "fair notice" of

4   both the particular claims being asserted and "the grounds upon which [those claims]

5   rest[]." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 & n.3 (2007) (citations omitted).

6        In deciding a motion to dismiss, all material factual allegations of the complaint are

7   accepted as true, as well as all reasonable inferences to be drawn from them.  *Cahill v.*

8   *Liberty Mut. Ins. Co.*, 80 F.3d 336, 338 (9th Cir. 1996).  A court, however, need not accept

9   all conclusory allegations as true.  Rather, it must "examine whether conclusory allegations

10  follow from the description of facts as alleged by the plaintiff." *Holden v. Hagopian*, 978

11  F.2d 1115, 1121 (9th Cir. 1992) (citation omitted).  A motion to dismiss should be granted

12  if a plaintiff's complaint fails to contain "enough facts to state a claim to relief that is

13  plausible on its face." *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when

14  the plaintiff pleads factual content that allows the court to draw the reasonable inference

15  that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing

16  *Twombly*, 550 U.S. at 556).

17        *Pro se* complaints are "held to less stringent standards than formal pleadings drafted

18  by lawyers." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citation omitted).  A *pro*

19  *se* plaintiff's complaint must be construed liberally to determine whether a claim has been

20  stated.  *See Zichko v. Idaho*, 247 F.3d 1015, 1020 (9th Cir. 2001).  However, a *pro se*

21  litigant's pleadings still must meet some minimum threshold in providing the defendants

22  with notice of what it is that they allegedly did wrong. *See Brazil v. U.S. Dep't of Navy*,

23  66 F.3d 193, 199 (9th Cir. 1995).  Moreover, *pro se* attorneys are not automatically subject

24  to the same liberal pleading standards. *Price v. Peerson*, 2014 WL 12579823, at *4 (C.D.

25  Cal. May 15, 2014), *aff'd*, 643 F. App'x 637 (9th Cir. 2016) (collecting cases).

26  ///

27  ///

28  ///

## III. DISCUSSION

### A. Sufficiency of Notice

As a threshold matter, Poway argues that Plaintiff's NOVs failed to provide sufficient statutory notice under the CWA and the ESA, and thus the Court lacks subject matter jurisdiction over Plaintiff's claims. As described in Section I.A.i, a citizen suit brought under the CWA requires 60-days' notice to the EPA, the State of California, and any alleged violator specifying the who, what, when, and where of the allegedly violated standard, limitation, or order. 40 C.F.R. § 135.3(a). The ESA similarly requires 60-days' notice, but to the Secretary and the alleged violator regarding the violation and intent to sue. 16 U.S.C. § 1540(g)(2)(A)(i). The notice requirements under both statutory schemes are jurisdictional necessities that must be strictly complied with. *Ctr. for Biological Diversity v. Marina Point Dev. Co.*, 566 F.3d 794, 800 (9th Cir. 2009) (CWA's notice requirement "is a jurisdictional necessity . . . [w]hen a party does not fulfill that threshold requirement, 'the district court must dismiss the action as barred . . . .'") (quoting *Hallstrom v. Tillamook County*, 493 U.S. 20, 29 (1989)); *Sw. Ctr. for Biological Diversity v. U.S. Bureau of Reclamation*, 143 F.3d 515, 520 (9th Cir. 1998) (ESA's "sixty-day notice requirement is jurisdictional" and "failure to strictly comply with the notice requirement acts as an absolute bar to bringing suit").

First, the Court finds that Plaintiff provided sufficient statutory notice under the CWA.[2] The Ninth Circuit defined valid notice in *Marina Point* as "true notice that tells a target precisely what it allegedly did wrong, and when" such that "[t]he target is not required to play a guessing game." 566 F.3d at 801. Examination of Plaintiff's NOVs demonstrates that the required information under *Marina Point*—including the nature and timing of the alleged wrongs—is present, even if not immediately apparent on a first read. Although Poway argues that Plaintiff's "shotgun" and "everything but the kitchen sink"

---

[2] In determining sufficiency of notice, the Court did not consider Plaintiff's Fourth Notice of Violation which was sent after Plaintiff's first two lawsuits, now consolidated, before this Court.

1 NOVs are too long and confusing to constitute notice, Poway does not argue that any of

2 the statutorily required information is *missing*, and indeed, Poway appears to have

3 comprehended the thrust of Plaintiff's accusations. Dkt. 45 at 6–7. While there may be

4 notices so incomprehensible as to provide insufficient notice under the CWA, the Court

5 finds that on these particular facts, and in light of the Court's thorough examination of the

6 NOVs, notice under the CWA has been satisfied.

7       Second, the Court finds that only Plaintiff's 1st NOV constitutes valid statutory

8 notice under the ESA. Notice under the ESA must be sent to the Secretary and the alleged

9 violator to "put[] the agencies on notice of a perceived violation of the statute and an intent

10 to sue." *All. for the Wild Rockies v. U.S. Dep't of Agric.*, 772 F.3d 592, 602 (9th Cir. 2014)

11 (citation omitted); *Save the Yaak Comm. v. Block*, 840 F.2d 714, 721 (9th Cir. 1988) (failing

12 to provide notice to Secretary deprived court of jurisdiction over ESA claim). Plaintiff

13 specified ESA violations in his 1st, 2nd, and 3rd NOVs, and sent each to Poway 60 days

14 prior to suing. Nevertheless, only the 1st NOV was addressed to the Secretary of the

15 Interior. *See* Dkts. 44-2, 44-3, 44-5, 44-6. Plaintiff's failure to send the 2nd and 3rd NOVs

16 to the Secretary deprives this Court of jurisdiction over claims noticed in the 2nd and 3rd

17 NOVs. Thus, pursuant to the ESA's jurisdictional bar, the Court will only consider

18 Plaintiff's ESA claims to the extent that the 1st NOV provided notice of those claims to

19 Poway.

20 **B. Failure to State a Claim**

21       Poway seeks to dismiss Plaintiff's TAC for failure to state a claim under Rule

22 12(b)(6). For the reasons set forth below, the Court finds that Plaintiff has sufficiently

23 stated claims that Poway, (1) violated the Permit by failing to obtain a Waste Discharge

24 Requirement for Pipperin Crossing (Claim 6); and (2) violated Permit Section E.3.a(1) by

25 failing to properly implement required best management practices ("BMPs") (Claim 7).

26 Poway has not moved to dismiss Plaintiff's claim that it violated the ESA by cutting the

27 Del Mar Manzanita plant species (Claim 8). Plaintiff's remaining claims are dismissed

28 under Rule 12(b)(6) as described below.

18cv2615-JO-DEB

*i. Claims 1, 9, and 10: Pollution from Culverts*

In Claims 1, 9, and 10, Plaintiff alleges that culverts washed out during storms caused pollution in Lake Poway in violation of Permit Sections A.1.a, A.1.c, and A.2.a(1) (the "Permit Prohibitions and Limitations"). *See* Dkt. 47-1 at 11–14; TAC ¶¶ 435, 497, 528–35, 646–702, 864–72, 874–91. Poway argues, and the Court agrees, that Poway's compliance with valid Water Quality Improvement Plans ("WQIP") and Jurisdictional Runoff Management Programs ("JRMP") specified in the Permit shields it from liability under the CWA. Compliance with a permit obtained pursuant to the CWA precludes liability. *Alaska Cmty. Action on Toxics v. Aurora Energy Servs., LLC*, 765 F.3d 1169, 1171 (9th Cir. 2014) ("[i]f a discharger is covered by a [valid CWA] permit and complies with that permit, the permit 'shields' it from liability under the CWA"); *Piney Run Pres. Ass'n v. Cty. Comm'rs of Carroll Cty., MD*, 268 F.3d 255, 269 (4th Cir. 2001) (same). Because compliance with a permit obtained pursuant to the CWA precludes liability, Claims 1, 9, and 10 hinge on whether Poway complied with the Permit or not. In determining compliance, the Court looks to the plain language of the Permit as it would any other contract. *Nat. Res. Def. Council*, 725 F.3d at 1204–05. "If the language of the permit, considered in light of the structure of the permit as a whole, 'is plain and capable of legal construction, the language alone must determine the permit's meaning.'" *Id.* (citation omitted).

Here, the plain language of the Permit provides that the creation, approval, and implementation of a valid WQIP and JRMP constitutes compliance with the Permit Prohibitions and Limitations. First, Permit Section A.4 states that "Each Copermittee must achieve compliance with [the Permit Prohibitions and Limitations] through timely implementation of control measures and other actions as specified in Provisions B and E of this Order." Dkt. 10-2 (the "Permit") at Section A.4. The Permit language could not be more explicit in this regard—a Copermittee achieves compliance with the Permit Prohibitions and Limitations when it implements Sections B and E of the Permit. Therefore, the Court turns to Sections B and E. Permit Section B, titled "Water Quality

8

1   Improvement Plans," describes the requirements of a valid WQIP under the Permit. *Id.* at

2   Section B.   Similarly, Permit Section E, titled "Jurisdictional Runoff Management

3   Programs," describes the requirements of a valid JRMP under the Permit. *Id.* at Section E.

4   It is thus unambiguous according to the plain language of the Permit that where a

5   Copermittee such as Poway creates and implements a WQIP and JRMP that satisfy Permit

6   Sections B and E, it complies with the Permit Prohibitions and Limitations.  Here, Plaintiff

7   has not pleaded violations of the WQIP or JRMP and therefore has not adequately pleaded

8   a Permit violation.  Thus, Claims 1, 9, and 10 are dismissed.

9   *ii. Claims 2 and 3: Pollution from the Springs*

10        In Claims 2 and 3, Plaintiff alleges that Poway violated Permit Sections E.2.a and

11   E.2.d by failing to monitor and prevent pollutants flowing from Kelly Spring and Rock

12   Haven Spring (the "Springs"). TAC ¶¶ 358–61, 537, 703–75.  The Court finds that Plaintiff

13   has not sufficiently pleaded a Permit violation of these Sections because the Permit does

14   not require Poway to take these actions with respect to the Springs. *Nat. Res. Def. Council*,

15   725 F.3d at 1204–05 ("permits are treated like any other contract"; the Court's "sole task"

16   "is to determine what Plaintiffs are required to show in order to establish *liability* under the

17   terms of *this particular* NPDES permit.") (emphasis in original).  Permit Section E governs

18   "illicit discharges" of "non-storm water" and requires Poway to detect and prevent such

19   illicit discharges. *See* Permit at Section E.2.  Plaintiff alleges that Permit Section E's

20   requirements applied to the Springs, and that Poway failed to implement these

21   requirements.  Permit at Section E; TAC ¶¶ 703–75.  However, the plain language of

22   Permit Section E requires Poway to "treat all non-storm water discharges as illicit" *unless*

23   certain exceptions apply.  Permit at Section E.2.a.  One exception is for springs—Poway

24   must treat flows from springs as illicit "*only if* [Poway] or the San Diego Water Board"

25   identifies it as such.  *Id.* at Section E.2.a.(3) (emphasis added).  Because Plaintiff makes no

26   allegation that Poway or the Board identified the Springs as illicit, he has not sufficiently

27   pleaded a violation of Permit Sections E.2.a or E.2.d.

28

1    Plaintiff nevertheless contended during oral argument that even if neither Poway nor

2    the Board identified the Springs as illicit flows, Plaintiff's NOVs triggered Poway's

3    obligation under Permit Sections E.2.a.(7) and E.2.d.(2) to investigate the Springs.  But the

4    mere allegation that Plaintiff sent NOVs to Poway does not plausibly allege a violation of

5    these Permit Sections—each requires something more.   First, under Permit Section

6    E.2.a.(7), Poway is only required to "reduce or eliminate non-storm water discharges"

7    "where feasible and priorities and resources allow."  *Id.* at Section E.2.a.(7).  The TAC

8    makes no allegations regarding the feasibility of preventing the Springs' discharges and

9    does not otherwise allege that Poway failed to meet this standard.  Second, under Permit

10   Section E.2.d.(2), Poway is not required to investigate every report from the public

11   regarding illicit flows.  Rather, Poway is required to implement procedures to assess public

12   reports for "reasonable potential" and "validity."  *Id.* at Section E.2.d.(2).  The TAC makes

13   no allegations regarding Poway's assessment of the reasonableness or validity of Plaintiff's

14   NOVs or any other facts plausibly alleging that Poway's obligations were triggered under

15   Permit Section E.2.d.(2).  Thus, Plaintiff's claims based on illicit flows from the Springs

16   are dismissed.

17   *iii. Claims 4–7: Unlawful Repair Projects*

18         Plaintiff's Claims 4–7 concern Poway's allegedly unlawful repair projects at Warren

19   Crossing, the Boat Dock, and Pipperin Crossing (collectively, the "Projects").  Plaintiff

20   claims that the Projects violated (1) Permit Section A.3 (Claim 4); (2) CWA §§ 1341 and

21   1344 (Claim 5); (3) Permit Section E.3.a(3)(a) n.25 and "Poway's BMP Manuel" (Claim

22   6); and (4) Permit Section E.3.a (Claim 7).

23                          1. Claim 4: Permit Section A.3

24         In Claim 4, Plaintiff contends that Poway violated Permit Section A.3 "by failing to

25   enforce and implement BMPs [at Warren Crossing and Pipperin Crossing] as listed in its

26   2013 MS4 Permit, its JRMP, and its BMP Manuel," TAC ¶¶ 780–93, which according to

27   Plaintiff, constitutes a failure to reduce pollutants in storm water to the "maximum extent

28   practicable" as required under Permit Section A.3.  As currently pleaded, Plaintiff's Claim

1   4 merely states that Poway had an obligation to "enforce and implement" unspecified

2   BMPs, as allegedly required by unspecified sections of the Permit, the JRMP, and the BMP

3   Manual. *See id.*[3]  This is not enough to satisfy Rule 12(b)(6) requirements. "[W]here the

4   well-pleaded facts do not permit the court to infer more than the mere possibility of

5   misconduct," Plaintiff has not stated a plausible claim for relief. *Iqbal*, 556 U.S. at 679.

6   Plaintiff's reference to unspecified BMP requirements, supposedly contained somewhere

7   in a 398-page Permit as well as other documents not attached to the TAC, is not sufficient

8   to enable the Court to determine whether Plaintiff has adequately pleaded a violation of the

9   Permit. Accordingly, Claim 4 is dismissed.

10                    2.  Claim 5: CWA §§ 1341 and 1344

11       In Claim 5, Plaintiff states that Poway failed to obtain individualized permits for

12   Warren Crossing and the Boat Dock in violation of CWA § 1344, which requires a permit

13   from the U.S. Army Corps of Engineers (the "Corps") for the discharge of dredged or fill

14   material.   33 U.S.C.A. § 1344.   Plaintiff also alleges that Poway failed to obtain

15   individualized certifications for Warren Crossing and the Boat Dock in violation of CWA

16   § 1341, which prohibits the Corps from issuing a § 1344 permit unless the permit applicant

17   has provided the Corps with a certification from the state. *See* 33 U.S.C.A. §§ 1341, 1344.

18       The Court must first examine whether Plaintiff's §§ 1341 and 1344 claims fall

19   within the permissible scope of a private citizen suit under the CWA.  CWA § 1365

20   specifies the parameters of a private citizen suit as follows: a private citizen can sue any

21   "person" for violation of (A) "an effluent standard or limitation," or (B) "an order issued"

22   by the EPA or the State with respect to such a standard or limitation.   33 U.S.C.A.

23

24

25   _____

26

27   [3] Plaintiff argues in his opposition that Claim 4 is based on Poway's failure to implement BMPs
     listed in Permit Section E.3.a(3).  However, even if Plaintiff had alleged this in Claim 4 (and he does not,
28   *see* TAC ¶¶ 776–98), the claim would still be dismissed for the same reasons Claim 7 must be dismissed,
     as described below.

                                        11

1 § 1365(a).[4]  *Id.*  CWA § 1365(f) defines the term "effluent standard or limitation" as

2 consisting of eight specific categories: (1) an unlawful act under § 1311, (2) a limitation

3 under § 1311 or § 1312, (3) a standard of performance under § 1316, (4) a prohibition or

4 standard under § 1317, (5) a standard or requirement under § 1322(p); (6) a certification

5 under § 1341, (7) a permit or condition of a permit issued under § 1342, or (8) a regulation

6 under § 1345(d).  As set forth above, the CWA specifically enumerates the sections under

7 which a private citizen can sue and § 1344 is not among them.  The Court is persuaded by

8 well-reasoned district court decisions within the Ninth Circuit concluding that the omission

9 of § 1344 from the specifically enumerated list in § 1365 means that a private citizen cannot

10 sue for purported violations of § 1344.  *Nw. Env't Def. Ctr. v. U.S. Army Corps of*

11 *Engineers*, 118 F. Supp. 2d 1115, 1117–19 (D. Or. 2000) (holding CWA does not permit

12 citizen suit to enforce § 1344 permit); *Jones v. Rose*, 2005 WL 2218134, at *23 (D. Or.

13 Sept. 9, 2005) (same).  The Court agrees and concludes that the violation of a § 1344 permit

14 is not an "effluent standard or limitation" under § 1365.  Thus, Plaintiff's claim is barred

15 for lack of jurisdiction to the extent it arises under § 1344.

16      The Court next turns to whether Plaintiff has stated a viable § 1341 violation based

17 on Poway's projects at Warren Crossing and the Boat Dock.  While § 1365 specifies that a

18 private citizen may bring suit under § 1341, it is less clear whether such a claim is viable

19 against the *applicant* for a permit for failure to present a § 1341 certification to the Corps,

20 as opposed to against the *Corps*—the body responsible for ensuring the receipt of the

21 certification before issuing a § 1344 permit.[5]

22

23

_____

24 [4] Because Plaintiff is not alleging a violation of an order issued by the Administrator of the EPA
or the State of California, the only possible basis of Plaintiff's claim is Poway's violation of an "effluent

25 standard or limitation."  *See* § 1365(a)(1).

26 [5] Citizen suits under § 1341 are not common, but nearly all the existing case law addresses either
(1) a permittee's alleged violations of an issued § 1341 certification, or (2) a federal agency's wrongful

27 issuance of a permit without a § 1341 certification.  Accordingly, whether a plaintiff can sue a § 1344
permit applicant for failing to present a § 1341 certificate to the Corps is an unsettled area of law.  *Oregon*

28 *Nat. Desert Ass'n v. Dombeck*, 172 F.3d 1092, 1095 (9th Cir. 1998) ("An agency that has issued a permit
without the appropriate certification is in violation of the certification requirement under § 1341 and

18cv2615-JO-DEB

1    Even if Plaintiff could proceed against Poway under § 1341, as opposed to against

2  the Corps, Plaintiff's claims as to both projects would nevertheless fail because the CWA

3  does not require individualized certifications. First, with respect to Warren Crossing, the

4  Court notes that Poway's alleged violation of the CWA is the failure to obtain an

5  *individualized* § 1341 certification for Warren Crossing. TAC ¶ 803. CWA § 1341

6  requires a permit applicant to provide the Corps with a certification before the Corps can

7  issue the permit. 33 U.S.C.A. § 1341. Critically, the Corps can, after obtaining a § 1341

8  certification, issue *general* permits that cover multiple parties in a region. 33 U.S.C.

9  § 1344(e) (authorizing the issuance of general permits on a state, regional, or nationwide

10  basis); *Keating v. FERC*, 927 F.2d 616, 619 (D.C. Cir. 1991) (general permits authorize

11  "any party to engage in the sort of activity described in the permit without the need to seek

12  prior project-specific authorization"). Here, Plaintiff acknowledges that Poway performed

13  work at Warren Crossing under a general permit issued by the Corps. TAC ¶ 807. Plaintiff

14  does not allege that the Corps failed to obtain a § 1341 certification for this general permit.

15  Rather, Plaintiff argues that § 1341 requires Poway to obtain individualized certifications

16  on a project-by-project basis, regardless of whether those projects are performed pursuant

17  to a valid general permit. There is no such requirement in § 1341. Therefore, Plaintiff's

18  claim that Poway failed to obtain an individualized certification for Warren Crossing in

19  violation of § 1341 is dismissed.

20    Second, with respect to the Boat Dock, Plaintiff claims that Poway failed to obtain

21  any certification at all, but taking those allegations as true, Plaintiff has failed to allege an

22  ongoing violation. To state a claim under the CWA, Plaintiff must allege an ongoing

23

24

---

25  therefore in violation of an 'effluent standard or limitation' under § 1365"); S. Rep. 92-414 at 3735 (1971)
(noting the "purpose of the certification mechanism provided in this law is to assure that Federal licensing

26  or permitting agencies cannot override State water quality requirements"); *Ohio Valley Env't Coal. v.
Lexington Coal Co., LLC*, 2021 WL 1093631, at *4 (S.D.W. Va. Mar. 22, 2021) (citizen suit to enforce

27  conditions of an issued § 1341 certification); Debra L. Donahue, *The Untapped Power of Clean Water Act
Section 401*, 23 Ecology L.Q. 201, 271 (1996) (noting that § 1341 is "less clear whether a plaintiff may

28  sue an applicant for a federal permit to force it to request a certification").

1  violation, as opposed to a wholly past violation. *Nat. Res. Def. Council v. Sw. Marine,*

2  *Inc.*, 236 F.3d 985, 998 (9th Cir. 2000) ("the statute 'confers jurisdiction over citizen suits

3  when the citizen-plaintiffs make a good-faith allegation of continuous or intermittent

4  violation.'" (quoting *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484

5  U.S. 49, 64 (1987)).   Here, Plaintiff's only attempt to satisfy the ongoing violation

6  requirement for the Boat Dock is that "[t]here is a reasonable likelihood that the City of

7  Poway will conduct future dredge and fill operations in the Lake Poway area . . . without

8  obtaining *individualized*" certifications. TAC ¶ 819 (emphasis added). But as discussed

9  above, there is no requirement under § 1341 for an individualized certification of the type

10  Plaintiff describes.   Accordingly, even assuming Plaintiff's Claim 5 is properly brought

11  against Poway, Plaintiff has not adequately pleaded a good faith basis for an ongoing

12  violation because he has not alleged why the lack of an individualized certification is a

13  violation in the first instance. Plaintiff's claim under § 1341 is therefore dismissed in full.

### 3.  Claim 6: Permit Section E.3.a(3)(a) n.25

15  Plaintiff's Claim 6 states that Poway violated Permit Section E.3.a(3)(a) n.25 by

16  failing to obtain Waste Discharge Requirements ("WDRs") for the Projects. Poway argues,

17  and the Court agrees, that this claim is only viable to the extent that the Projects dredged

18  or filled waters of the state.   Permit Section E.3.a(3)(a) n.25 provides that "Projects

19  proposing to dredge or fill waters of the state must obtain waste discharge requirements."

20  Plaintiff states in the TAC that the Warren Crossing and Boat Dock projects dredged and

21  filled WOTUS, not waters of the state.   TAC ¶¶ 800–801, 810, 812.   Accordingly,

22  Plaintiff's own factual allegations, which the Court must accept as true, bar Plaintiff's

23  claim with respect to these two projects.

24  Plaintiff's claim regarding Pipperin Crossing fares better. All that Plaintiff needs to

25  plead at this stage is that Poway was required (or prohibited) from taking a specified action

26  under the Permit, and that Poway failed to take that action in violation of the Permit's

27  terms. Here, Plaintiff alleges that Pipperin Crossing involved dredging and filling in waters

28  of the state, that Permit Section E.3.a.(3)(a) n.25 required a WDR, and that Poway did not

18cv2615-JO-DEB

1    obtain one.  This is sufficient at the motion to dismiss stage.  Therefore, Plaintiff's Claim

2    6 is dismissed with respect to Warren Crossing and the Boat Dock, but the motion to

3    dismiss Claim 6 with respect to Pipperin Crossing is denied.

                       4.  Claim 7: Permit Section E.3.a

5        In Claim 7, Plaintiff alleges that Poway violated Permit Section E.3.a by failing to

6    issue appropriate BMPs for the Projects.   Because Permit Section E.3.a applies to

7    "development projects," the Court must first examine whether Plaintiff has sufficiently

8    alleged that the Projects are development projects.  The term "development projects" is

9    defined in the Permit as "[c]onstruction, rehabilitation, redevelopment, or reconstruction

10   of any public or private projects."  *See* Permit at Attachment C.  These sub-terms are

11   defined broadly: for instance, "rehabilitation" is defined in part as "Remedial measures or

12   activities for the purpose of improving or restoring the beneficial uses of streams, channels

13   or river systems."  *Id.*  The Court cannot conclude based on the pleadings alone that the

14   Projects are not "development projects" under the broad definitions incorporated into the

15   Permit.  Therefore, the Court denies Poway's motion to dismiss Claim 7 on this ground.

16       As to the substance of Poway's alleged violations of Permit Section E.3.a, Plaintiff

17   has adequately pleaded violations of Permit Section E.3.a.(1) but not Sections E.3.a.(2) or

18   E.3.a.(3).  Permit Section E.3.a is broken into three sections.  Section E.3.a.(1) outlines

19   general BMP requirements for onsite and structural BMPs without any qualifying

20   language.  *See* Permit at Section E.3.a.(1).  Sections E.3.a.(2)–(3), on the other hand,

21   require certain BMPs "where applicable and feasible."  *See* Permit at Sections E.3.a.(2)–

22   (3); *see also, e.g., Iqbal*, 556 U.S. at 679; *Nat. Res. Def. Council*, 725 F.3d at 1204–05.

23   Plaintiff alleges that Poway was required to implement the BMPs specified in all three

24   Sections of E.3.a for development projects, that the Projects are development projects, and

25   that Poway thus violated the permit by failing to implement these BMPs for the Projects.

26   This is enough to allege a violation of E.3.a.(1), which imposes requirements for

27   development projects without caveats.  Plaintiff's claims based on E.3.a.(2) and E.3.a.(3),

28   however, are not plausible because accepting Plaintiff's allegations as true, Plaintiff has

                                    15

                                                                    18cv2615-JO-DEB

1   not stated a Permit violation.  Plaintiff alleges that Poway failed to issue the BMPs

2   specified in Sections E.3.a.(2)–(3), but these Sections only require Poway to implement

3   BMPs "where applicable and feasible." Because Plaintiff's allegations lack any contention

4   regarding feasibility or applicability, no Permit violation has been pleaded.  Plaintiff's

5   Claim 7 is thus dismissed to the extent it is based on inadequately pleaded violations of

6   E.3.a.(2)–(3).

7   *iv. Claim 8: Violations of the ESA*

8          In Claim 8, Plaintiff alleges that Poway harmed endangered plant and bird species

9   by building and maintaining hiking trails on his property in violation of the ESA.  As a

10   threshold matter, the Court must examine whether Plaintiff provided sufficient notice to

11   Poway of its claim under the ESA such that this Court has jurisdiction.  *See supra* Section

12   III.A.  The Court finds that Plaintiff's Claim 8, as currently stated, was noticed in the 1st

13   NOV and therefore satisfies the jurisdictional bar.  In the 1st NOV, Plaintiff states that

14   Poway violated the ESA and state laws by creating and maintaining hiking trails, which

15   involved cutting an endangered plant called the Del Mar Manzanita and "disturbing the

16   habitat" of two endangered or threatened birds, the California gnatcatcher and the Least

17   Bell's vireo.  1st NOV at 3, 24.  Plaintiff alleges the same facts in the TAC.  TAC ¶¶ 849–

18   62.  Accordingly, the Court has jurisdiction over Plaintiff's Claim 8 under the ESA.

19          Having assured itself of jurisdiction, the Court turns to the sufficiency of Plaintiff's

20   claim under Rule 12(b)(6).  The Court agrees with Poway that Plaintiff has not sufficiently

21   alleged "harm" to bird species as that term is defined in the ESA.  Under the ESA, it is

22   unlawful for anyone to "take" a protected species, which is defined as "harass, harm,

23   pursue, hunt, shoot, wound, kill, trap, capture or collect, or to attempt to engage in any such

24   conduct." 16 U.S.C. § 1538(a)(1)(B); § 1532(19); *Forest Conservation Council v. Rosboro*

25   *Lumber Co.*, 50 F.3d 781, 784 (9th Cir. 1995).  Courts have interpreted "take" to require

26   actual injury or death to wildlife.  *See Babbitt v. Sweet Home Chapter of Communities for*

27   *a Great Oregon*, 515 U.S. 687, 691 (1995) (affirming the Secretary of the Interior's

28   definition of harm as "an act which actually kills or injures wildlife"); *Defs. of Wildlife v.*

16

1   *Bernal*, 204 F.3d 920, 924–25 (9th Cir. 2000) (finding "reasonably certain threat of

2   imminent harm" satisfies the actual injury requirement where future harm is alleged).

3   Habitat modification that significantly impairs essential behavioral patterns can constitute

4   a take under the ESA. *Bernal*, 204 F.3d at 925; *Marbled Murrelet v. Babbitt*, 83 F.3d 1060,

5   1065–66 (9th Cir. 1996) (concluding that habitat modification which significantly impaired

6   breeding and sheltering of a listed species amounted to "harm" under the ESA). At present,

7   Plaintiff states in a conclusory fashion that Poway harmed the bird species' habitats, but

8   does not explain how or to what extent:

> The City has harmed endangered and threatened animal species
> and their critical habitat, including the California gnatcatcher and
> the least bell's vireo . . . because Plaintiff's parcels contain
> critical habitat for the California gnatcatcher and the least bell's
> vireo, and the City's activities on Plaintiff's parcels have harmed
> these species and their habitat." TAC ¶ 852.

14   The above is a pure recitation of the legal elements of a taking claim under the ESA

15   that does not sufficiently allege facts establishing harm within the meaning of the statute.

16   Plaintiff's allegations that Poway harmed the bird species' habitat does not state how the

17   habitat modification constitutes actual harm or how it significantly impairs the bird species'

18   essential behavioral patterns. Therefore, Plaintiff's Claim 8 is dismissed for failure to state

19   a claim to the extent it is based on harm to the bird species. Because Poway only moves

20   to dismiss based on the meaning of harm to animal life, the Court does not address the

21   portion of Plaintiff's Claim 8 based on the plant species, which consequently survives

22   Poway's motion to dismiss.

23   *v. Claim 11: Unlawful Hiking Trails*

24   In Claim 11 under 42 U.S.C. § 1983, Plaintiff alleges that Poway's creation and

25   maintenance of the same hiking trails at issue in Claim 8 constitutes an unconstitutional

26   taking of his property in violation of the Fourteenth Amendment. TAC ¶¶ 892–909. The

27   statute of limitations for a takings claim brought under § 1983 is two years from the date

28   of accrual. *Wilson v. Garcia*, 471 U.S. 261 (1985) (holding that the relevant state's

1   personal injury statute of limitations applies to all § 1983 claims); *Pouncil v. Tilton*, 704

2   F.3d 568, 573 (9th Cir. 2012) (noting California's personal injury statute has a two-year

3   state of limitations); *Golden Gate Hotel Ass'n v. City & Cty. of San Francisco*, 18 F.3d

4   1482, 1486 ("all claims of unjust taking ha[ve] to be brought pursuant to Section 1983 and,

5   therefore, the [Section 1983] statute of limitations applie[s]").[6] Accrual occurs "when a

6   party knows or has reason to know of the injury." *Golden Gate*, 18 F.3d at 1486; *Pouncil*,

7   704 F.3d at 574 ("[a]n action ordinarily accrues on the date of the injury"). The parties do

8   not dispute that Poway created the hiking trails on Plaintiff's property in 2007, more than

9   ten years before Plaintiff filed suit. Based on Plaintiff's allegations in the TAC that Poway

10   has been regularly maintaining the trails it created in 2007, the Court has no reason to doubt

11   that Plaintiff knew Poway created the trails in 2007 and thus, that the claim accrued at that

12   time. TAC ¶ 624. Therefore, Claim 11 is untimely.

13        Finally, Plaintiff does not plead any facts to support equitable tolling of the statute

14   of limitations. Courts have applied the doctrine of equitable tolling to suspend the statute

15   of limitations where a plaintiff was prevented from asserting its claims by a defendant's

16   wrongful conduct, or "extraordinary circumstances beyond [a plaintiff's] control made it

17   impossible to file." *Seattle Audubon Soc. v. Robertson*, 931 F.2d 590, 595 (9th Cir. 1991).

18   To invoke equitable tolling, Plaintiff needed to plead sufficient facts excusing his

19   noncompliance with the statute of limitations. *Hinton v. Pac. Enterprises*, 5 F.3d 391, 395

20   (9th Cir. 1993) ("[t]he burden of alleging facts which would give rise to tolling falls upon

21   the plaintiff"); *see also Wasco Prod., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 991–92

22

23

---

24      [6] Poway incorrectly states in its motion to dismiss that the relevant statute of limitations is five

25   years. Dkt. 45 at 23; *Wise v. Verizon Commc'ns, Inc.*, 600 F.3d 1180, 1185 (9th Cir. 2010) (explaining
that federal interests are advanced by using a single statute of limitations for claims arising under § 1983);

26   *Miesegaes v. Dep't of State Hosps.-Atascadero*, 2021 WL 3518539, at *6 (C.D. Cal. June 14, 2021), *report
and recommendation adopted*, 2021 WL 3511199 (C.D. Cal. Aug. 9, 2021) (noting statute of limitations

27   under § 1983 is two years irrespective of the underlying claim). Regardless, even if Poway were correct,
Plaintiff's claim would still be barred.

28

1  (9th Cir. 2006) (collecting cases). Plaintiff does not plead that Poway prevented him from

2  bringing his claim or that any extraordinary circumstances existed that would justify

3  Plaintiff's ten-year delay. Accordingly, any claim that Poway's creation and maintenance

4  of the hiking trails constitutes an unconstitutional taking is dismissed.

5      *vi. Claim 12: Unlawful Designation of Warren Creek*

6          Plaintiff's final claim arising under § 1983 alleges an unconstitutional taking based

7  on Poway's wrongful designation of Warren Creek as an "ephemeral stream" instead of

8  waters of the United States ("WOTUS"). The Court finds that this claim is implausible as

9  a matter of law because Poway does not have the authority to designate or de-designate

10  waters as WOTUS. Under the CWA's statutory scheme, the CWA applies to "navigable

11  waters," which is defined as "waters of the United States, including the territorial seas."

12  33 U.S.C. §§ 1311(a); 1342(b); 1362(7). Congress delegated the authority to implement

13  the CWA to the EPA and the Corps. *See id.* § 1361(a). The EPA's and the Corp's authority

14  to implement the CWA includes defining WOTUS.[7] Plaintiff alleges that Poway has a

15  policy of wrongly "trying to remove the WOTUS designation," based on Poway labeling

16  Warren Creek an "ephemeral stream" in its City Council minutes and in its filings in this

17  lawsuit. TAC ¶¶ 913–14.[8] That claim is facially implausible because Poway does not have

18  the authority to define the scope of WOTUS.[9] Therefore, Claim 12 is dismissed.

19

20

21

22      [7] *See, e.g.*, Final Rule for Regulatory Programs of the Corps of Engineers, 51 Fed. Reg 41,206
(Nov. 13, 1986) (1986 WOTUS definition promulgated by the Corps); The Navigable Waters Protection

23  Rule: Definition of "Waters of the United States," 85 Fed. Reg. 22,250 (Apr. 21, 2020) (revised definition
of WOTUS promulgated by the EPA and the Corps); Revised Definition of "Waters of the United States,"

24  86 Fed. Reg. 69,372 (Dec. 7, 2021) (further revised WOTUS definition proposed by the EPA and the
Corps).

25      [8] Plaintiff also confirmed during oral argument that his claimed injury is the reduced economic
value of his land if Warren Creek is not deemed WOTUS, but this clarification fails to salvage his claim.

26      [9] Because Plaintiff has failed to state a viable § 1983 claim, the Court declines to address Poway's

27  arguments in its motion to dismiss that it is immune from liability based on its lobbying and litigation
activity, as well as Plaintiff's response that such immunity does not apply. Dkt. 45 at 24–25; Dkt. 47-1 at

28  25.

**C. Failure to Plead a Short and Plain Statement**

    The Court notes that Plaintiff's TAC largely fails to comply with Federal Rule of Civil Procedure 8(a)'s requirement of a short and plain statement. *See McHenry v. Renne*, 84 F.3d 1172, 1178–80 (9th Cir. 1996) (upholding Rule 8(a) dismissal of complaint that was "argumentative, prolix, replete with redundancy, and largely irrelevant"); *Cafasso, United States ex rel. v. General Dynamics C4 Systems, Inc.*, 637 F.3d 1047, 1059 (9th Cir. 2011) (citing cases upholding Rule 8 dismissals where pleadings were "verbose," "confusing," "distracting, ambiguous, and unintelligible," "highly repetitious"). The TAC is 240 pages long with 965 individual paragraphs and an additional 600 pages of exhibits. Throughout the first 240 pages, the TAC jumps from topic to topic in a haphazard manner that makes connecting the relevant facts to Plaintiff's claims an onerous task. Based on Plaintiff's shotgun approach, Poway requested dismissal under Rule 8 for failure to plead a short, plain, and decipherable statement. Dkt. 45 at 7–8. The Court denies dismissal on Rule 8 grounds at this time given Plaintiff's *pro se* status and because Poway was generally able to decipher the crux of Plaintiff's claims in its motion to dismiss.

///
///
///
///
///
///
///
///
///
///
///
///
///

18cv2615-JO-DEB

## IV. CONCLUSION AND ORDER

For the reasons discussed above, the Court GRANTS IN PART and DENIES IN PART Poway's motion to dismiss [Dkt. 45]. The Court grants Poway's motion to dismiss with the exception of the following claims. The Court finds that Plaintiff has sufficiently stated claims that Poway (1) violated the Permit by failing to obtain a Waste Discharge Requirement for Pipperin Crossing (Claim 6), and (2) violated Permit Section E.3.a(1) by failing to properly implement required BMPs (Claim 7). Poway did not move to dismiss Plaintiff's Claim 8 that Poway violated the ESA by cutting the Del Mar Manzanita. Poway should answer Plaintiff's TAC with respect to these three remaining claims within 14 days of the date of this order.

**IT IS SO ORDERED**.

Dated:  May 13, 2022

Honorable Jinsook Ohta
United States District Judge

18cv2615-JO-DEB

Clear Form

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

Kevin T. Kelly )
)
)
vs. )
)
)
City of Poway, a municipal corp. )
)
)
_____ )

Case No. ___18cv2615_____

**DECLARATION OF SERVICE**

Person Served:
City of Poway
_____

Date Served:
06/07/22
_____

I, the undersigned declare under penalty of perjury that I am over the age of eighteen years and not a party to this action; that I served the above named person the following documents:
Notice of Appeal
in the following manner: (check one)

1)        By personally delivering copies to the person served.

2)        By leaving, during usual office hours, copies in the office of the person served with the person who apparently was in charge and thereafter mailing (by first-class mail, postage prepaid) copies to ther person served at the place where the copies were left.

3)        By leaving copies at the dwelling house, usual place of abode, or usual place of business of the person served in the presence of a competent member of the household or a person apparently in charge of his office or place of business, at least 18 years of age, who was informed of the general nature of the papers, and thereafter mailing (by first-class mail, postage prepaid) copies to the person served at the place where the copies were left.

4)    ✗    By placing a copy in a separate envelope, with postage fully prepaid, for each address named below and depositing each in the U.S. Mail at
El Centro    on June 7    , 2022

Alan Fenstermacher, Rutan & Tucker LLP
18575 Jamboree Rd. 9th Floor
Irvine, CA 92612

Joshua Levine, Booth LLP
1849 Sawtelle Blvd.
Suite 500
LA, CA 90025

Executed on ___June 7___ , 2022___ at El Centro, CA.

_Kevin Kelly_ _____

::ODMA\PCDOCS\WORDPERFECT\14560\2 May 5, 1999 (10:01am)